## AMERICAN ORDNANCE CO. v. DRIGGS–SEABURY GUN & AMMUNITION CO.

### (Circuit Court of Appeals, Second Circuit.  May 8, 1901.)

### No. 121.

PATENTS—INVENTION—BREECH-LOADING ORDNANCE.

The Dashiell patent, No. 544,637, for breech-loading ordnance, claim 19, which covers merely a mutilated screw breech block of a two-motion gun, cut away longitudinally on one side in a curve drawn from the pivot of the carrier, to enable the block to swing out without withdrawal in the direction of the bore, is void for lack of patentable invention.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon appeal from a decree of the circuit court, district of Connecticut, dismissing the bill. 99 Fed. 982, 996. The suit was brought for alleged infringement of United States letters patent No. 544,637, dated August 13, 1895, to R. B. Dashiell, for improvements in breech-loading ordnance. Infringement was charged of claims 12, 14, 19, and 20, but only claim 19 is brought up on appeal.

W. H. Singleton, for appellant.

Ernest Wilkinson, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge.  The appellant's brief succinctly states the distinctions between various classes of ordnance which make the language of the specification and claim intelligible to one not an expert:

"In the class of ordnance to which the present invention belongs there are two types,—the 'three-motion' and 'two-motion' guns. In both, the guns have a breech chamber, with segmental, threaded portions, and a breech block, with complementary segmental, threaded portions; the breech and the block having blank portions. The block is inserted into the breech, the threaded portions of one registering with the blank portions of the other, and the block is then partially rotated, so that its threaded portions engage those of the gun, interlocking the block with the breech, and holding the former against the backward force of the discharge. Guns of this class are styled 'mutilated screw-threaded,' as the threads are interrupted. In the three-motion gun the breech block is partially rotated to release its threaded engagement with the breech, is withdrawn axially out of the breech, and is swung to one side; these being the three-motions which give the gun its name. Two-motion guns omit the second step, the axial withdrawal, and the breech block has the first and third motions only. The block is first partially rotated, and is then swung outwardly, opening the breech of the gun."

It is, of course, manifest that if the block is to be swung out to one side of the breech, without first being withdrawn axially, it must be of such shape as to swing clear of the breech, or, if not, clearance must be secured by cutting off some portion of the breech, of the block, or of both. Moreover, it is also manifest that the amount thus required to be cut off will depend upon the depth of the breech block and the location of the pivot on which it swings. The patent describes and claims several improvements:

"The object of the invention is to simplify the construction of rapid-fire guns; also to make the breech mechanism compact and of few parts; also, to swing the breech block of a mutilated screw breech gun to one side of

the gun without first retracting it in line with the bore; also, to improve the extractor and firing mechanism, and in various ways to improve the operating parts and combinations of mechanisms of the general character hereinafter described."

There are 22 claims. The specifications contain the following description of the breech block, or breech plug, and its movements:

"The breech-block chamber is provided with screw threads in segments, each segment being about one-eighth of the circumference, and being at top and bottom and at the sides of the breech-plug chamber. The mutilated screw breech plug, B, is of generally cylindrical form and has plane faces, which are at the top and bottom when the block is in unlocked position in the breech-block chamber. The block has segmental threads, each segment covering about forty-five degrees of its circumference, these segments being complementary to those in the wall of the chamber, so that, when the breech plug is entered from the rear, a rotation through an arc of forty-five degrees will completely interlock the segmental threads of the breech block with those of the gun. One of the blank curved faces of the breech plug has an inclined, or cam, groove, in which the operating lever moves to cause this partial rotation, as will be described, and the threads may be continuous at the outer end of this blank space. * * * The rear wall of the breech-block chamber is cut away, as by a cylindrical cutter of the maximum cross section of the breech plug, moved in the arc of a circle about the center, from which the plug swings, producing concave surfaces, as indicated at 6, 6, Fig. 13, so that, when the breech block is swung to the side, it will lie partially in a recess in the breech of the gun. The recess, 6, in the rear of the gun, has a guiding face, 7, which enters between two of the projecting segments on the breech block, and prevents the rotation of the breech block while swinging sidewise with its carrier. The guiding face, 7, is on a curve struck from the center, on which the breech-block carrier turns in opening or closing the breech. *The blank face, 70, of the breech block, which is adjacent to this guiding face, 7, in opening and closing, is also formed on a curve complementary to that of the guiding face, 7, so that, in swinging to open or closed position, the guide face, 7, on the gun, facing nearly towards the breech end of the gun, serves as a support against which the cut-away part, 70, of the breech block, rides smoothly.* The upper and lower mutilated screw segments [of the gun] are cut away slightly towards the rear of the gun, in the arc of the swinging movement of the breech block; the ends of the threads then presenting curved bearing or guiding shoulders, against which the thread segments of the plug will find bearing during the swinging movement of the plug, thus permitting the swinging movement of the breech block in opening to begin as soon as the screw threads are unlocked, or without drawing the breech block directly to the rear, as in the common form of mutilated screw breech block. * * * *The reverse construction, whereby the segments of the breech block may be struck from the curves of the swinging movement of the block, is considered an equivalent.* * * * As the breech block has practically no direct longitudinal movement, the mechanism is very compact, and, as the usual backward movement of the breech block is dispensed with, great rapidity of movement is had. * * * As the breech block is somewhat larger than the head of the cartridge, the cartridge head is fully covered when the breech is closed, while the plane faces on the block permit the swinging retraction with less cutting away than would otherwise be the case. The plane faces of the breech block permit the swinging movement of the block, with its carrier, immediately after the block is unlocked."

The passages in the specifications which in any way refer to a breech block having a side cut away will be found italicized supra. The claim relied on is:

"(19) In breech-loading ordnance, the combination, with the gun and a breech-block carrier pivoted thereto, of the mutilated screw breech block on said carrier, having a side cut away longitudinally in a curve drawn from the pivotal support of the carrier."

It will be observed that this claim does not refer to the function of the cut-away portion referred to in the specifications, where the engagement of the face thus left with other parts prevents rotation; and complainant insists that no such function is to be read into the claim. Necessarily so, because, if it were, concededly the defendant's structure would not infringe. The specifications and claim are most awkwardly framed. Construing it, as complainant contends, we have a claim so broad as to cover the transformation of a generally cylindrical, mutilated screw, breech-block, three-motion gun into a two-motion gun by "cutting away a side of the breech block longitudinally in a curve drawn from the pivotal support of the carrier." Granting that the record does not disclose an exact anticipation of such cut-away, generally cylindrical block, we entirely concur with the circuit court in the conclusion that the prior state of the art as disclosed in the specifications negatives all idea of invention, if the only improvement is that of this claim as complainant construes it. The inventor says:

"I am aware that frustro-conical breech plugs on the mutilated screw system have been made to swing open on a pivoted carrier from closed (but unlocked) position. The frustro-conical form of breech block permits this; but there are practical difficulties in the way of construction of frustro-conical breech mechanism which make that form objectionable in many instances. I am also aware that a cylindrical breech mechanism of the mutilated screw form has been devised, whereby the breech plug has but two thread segments and flattened sides, in which the plug swings open through a slot in the side of the gun. This form has some objections on account of the considerable cutting away both of gun and breech plug."

It would certainly seem that the proportioning of parts, so as to secure a swing in or out with less cutting away, was the work of a mechanic, and not of an inventor. Defendant's expert says:

"In designing these heavy-gun mechanisms, it has always been customary to count upon some cutting away of the threaded segment to permit the plug to swing out without complete withdrawal, and it has been the practice at the gun factory to cut them away. It seems to me absurd to consider that any invention lies in this, or that the greater or less cutting away of the threads should signify anything more than different degrees of mathematical skill."

We concur in this conclusion. The decree of the circuit court is affirmed, with costs.